Taylor HEARD, Plaintiff,

v.

GOLDEN FLAKE SNACK FOODS, INC., Defendant.

Civ. A. No. 85–C–2422–S.

United States District Court, N.D. Alabama, S.D.

Dec. 30, 1986.

Phillip B. Garrison, Robert L. Wiggins, Jr., Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff.

J. Fredric Ingram & Maura R. Goodwyn, Burr & Forman, Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLEMON, District Judge.

1. Plaintiff Taylor Heard complains that he was discharged by defendant Golden Flake Snack Foods, Inc. ("the Company") because of his race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*, ("Title VII"). The plaintiff has satisfied the jurisdictional and procedural prerequisites of Title VII. The action was timely filed under both statutes. The Court therefore has jurisdiction under Title VII and Section 1981.

2. Plaintiff, a black male citizen of the United States, was hired by the Company on December 12, 1973, and assigned to the Potato Chip Department as a plant utilityman.

3. In April, 1977, the Company adopted a written attendance policy, which provides, in pertinent part, as follows:

3. An unexcused absence is an absence for any reason not considered valid by the Company, whether arranged or not, and whether the employee notified his/her supervisor or not.

4. Absenteeism and Tardiness An employee who accumulates unexcused absences or tardies or a combination of the two for six of the scheduled work days in a three-month period will be disciplined as follows:
A. First three month period—Written reprimand
B. Second three month period within one year of the first—Written reprimand and final notice
C. A third three month period within one year of the second—Discharge

5. An employee who is absent without authorization for three consecutive days will be considered to have quit without notice as of the last day worked.

4. In July, 1977, the Company adopted a written disciplinary policy. Four separate types of disciplinary action are authorized under the policy: (a) verbal reprimand, (b) written reprimand, (c) written reprimand and final warning, and (d) discharge. Any disciplinary action is required to be recorded in the employee's personnel file, under the terms of the policy. Moreover, no employee may be discharged without the approval of the appropriate Vice-President, plant manager, or the Director of Human Resources.

5. If an employee reports to work on time and is late in returning from a scheduled break during his shift, this conduct is treated as "Leaving Work Station" under the Disciplinary Policy; it is not covered by the Company's Attendance Policy.

6. On June 23, 1978, plaintiff was given "Verbal Constructive Advice" for tardiness. On November 2, 1978, he was again warned concerning his failure to call in or report to work on November 1, 1978. He was given a final warning for his failure to call in and report that he would be tardy on April 9, 1979; and he was demoted and reduced in pay because of his unexcused absences. Plaintiff did not call in or report for work on January 18, 1980; on July 25, 1980, someone called in and reported him off two hours after his shift had started. On August 1, 1980, he did not call or come in.

7. On September 23, 1980, plaintiff broke a safety rule by throwing balls of dough and being away from his assigned work station.

8. On August 26, 1982, plaintiff was three hours tardy in reporting to work; he had not called in beforehand. On January 30, 1983, plaintiff did not call in or report for work.

9. On June 29, 1983, the Company gave plaintiff a Final Warning because he was tardy without calling in on June 26, 1983, and because he violated card punching procedures on June 29.

10. On October 21, 1984, plaintiff was tardy without calling in; and on October 24, 1984, he was out of his work area (an offense covered by the Disciplinary Policy). He was given a Final Warning on the latter date.

11. David Jones, a white male, became the Manager of the Department in which plaintiff worked (Corn and Tortilla Chips) on November 1, 1984. He testified that shortly after he came to the department, he reviewed the personnel files of all its hourly employees and concluded that two employees had attendance problems: plaintiff and Jean Short, a white female.

12. Three weeks later, on November 20, 1984, Jones had a meeting with the employees in the department. He told the employees that their attendance was vital, and that they needed to call in, before their scheduled shift, or have someone call in for them, whenever they expected to be absent or late. He told them that he could not do anything about their past attendance record, and that as far as he was concerned, he was writing on a clean slate with respect to the Attendance Policy. He brought copies of the Attendance Policy to the meeting, and explained the policy in its entirety to the employees. He told the employees that the policy would be followed by him in the future as it was written. He posted copies of the policy for the employees to take and study. He never mentioned that any part of the policy was not followed by the Company. Plaintiff was in attendance at this meeting.

13. On November 30, 1984, plaintiff was 15 minutes late in returning to his work station following a break. Upon his return, plaintiff explained to Jones and his immediate supervisor, T.W. Davis, that he had had to go to the bathroom after the break because of illness due to an upset stomach. Nonetheless, because of his "Leaving Work Station" and "Taking Extended Breaks," plaintiff was immediately suspended by Jones and Davis, "until further notice." He was given a written warning, which indicated that plaintiff was directed "to call in at 6:30 A.M. on Wednesday 12–5–84 and we [Jones and Davis] will inform him if he had a job or not." Plaintiff returned to work on December 6, 1984. At the time of the suspension, neither Jones nor Davis doubted the factual basis of plaintiff's explanation; and they were well aware that the Company does not expect its employees to work when they are sick. According to Jones, plaintiff should have told someone that he had an upset stomach.

14. The Company has never modified or abandoned paragraph 4 of its Attendance Policy. It has followed the policy since its inception.

15. As of January 1, 1985, plaintiff had not accumulated unexcused absences or tardies for six of the scheduled work days in the preceding three-month period, or for that matter, within the preceding year.

16. The Final Warning issued to plaintiff on October 24, 1984, was in derogation of the Company's Attendance Policy.

17. The Company usually tries to give an absent or tardy employee the benefit of any doubt before imposing discipline. It does not expect an employee to work when the employee is sick. If an employee is sick and his absence is called in, he is not required to have a doctor's excuse for that absence. The illness of a spouse, family health problems, and emergencies are considered by the Company as valid bases of excused absences. In most cases, where an employee or someone on his behalf does not call in and report his absence, the absence will not subject the employee to disciplinary action if the employee later presents a valid excuse. On occasion, the Company calls employees to find out the date on which they plan to return to work.

18. During the month of January, 1985, plaintiff's wife was eight-months pregnant with their first child. She developed complications in mid-January, and was admitted to Baptist Medical Center-Princeton on January 15. She remained there two days; and on January 17, she was transferred to the University of Alabama in Birmingham ("UAB") Hospital. She was discharged from UAB on January 20, 1985.

19. Plaintiff timely reported to work on January 17. He obtained permission from his supervisor to leave work early so that he could visit his hospitalized wife. Heard's supervisor was aware that plaintiff's wife was hospitalized. Plaintiff did

not report to work nor call in on January 18th.

20. Plaintiff timely reported to work on his next two scheduled shifts January 20 and 21, and he completed those shifts.

21. Because of the illness of his wife, plaintiff did not report for his scheduled shift on January 22. No one called in and reported his absence. Plaintiff does not have a telephone in his home. Plaintiff did not report to work as scheduled on January 22, and no one called in for him. Plaintiff likewise did not report to work on January 23, but prior to the shift, his sister-in-law called the Company. She was able to talk to plaintiff's supervisor, to whom she told that plaintiff's wife was bedridden and that plaintiff would not be coming in. Plaintiff did not report to work on January 24, but again his sister-in-law again called in for him prior to the scheduled shift. Plaintiff did not report to work on January 25, and no one called in for him. At all material times during this period, plaintiff's supervisor and the department manager were aware that plaintiff's wife was either hospitalized or bedridden.

22. Plaintiff reported to work on January 28, although he was ill with the flu. He was excused at noon by Dave Jones to go and see a doctor. Dave Jones did not, in his conversation with plaintiff, indicate that he considered plaintiff's absences of the previous week to be unexcused. Plaintiff visited a doctor at Baptist Medical Center-Princeton the same day.

23. On January 29, 1985, plaintiff called in and duly reported his absence to Dave Jones. He told Jones that pursuant to his doctor's advice, he would be off work until January 31. Jones did not expect plaintiff back at work until January 31.

24. When plaintiff returned to work on January 31, he brought a doctor's excuse with him and presented it to Jones. Jones then told him to go home and call back later in the day. When plaintiff called back, Jones told him that he was fired.

25. On the morning of January 31, Jones completed a "Personnel Status Report," which indicated that plaintiff was discharged as of that date. In the "Explanation/Justification" section of the form, Jones wrote:

Taylor missed 4 days 1–21, 1–22, 1–24, 1–25 without calling in—on 1–23 his sister & law [sic] called & said "He Wouldn't Be In." Taylor's status of being on final warning leaves no choice but termination.

Jones now concedes that January 21 was erroneously included as an unexcused absence.

26. Jones discharged plaintiff without any input from either of plaintiff's immediate supervisors. Jones' decision was ratified by the Manager of Human Resources. Jones had made the decision to discharge plaintiff as of January 25, 1985.

27. Plaintiff's discharge violated paragraph 4 of the Company's Attendance Policy.

28. Plaintiff's discharge was not approved by a vice-president, plant manager, or the Director of Human Resources at the Company, as required by the Company's Disciplinary Policy.

29. As Jones has conceded, and the evidence clearly establishes, Jean Short had an attendance record much worse than that of plaintiff at the time Jones became manager of the department. He knew, based on his review of her personnel file, that Short had a bad absenteeism problem and that she had been given numerous warnings for absenteeism and tardiness in the three-year period preceding November of 1984. On November 16, Jones talked to Short concerning her attendance record. Four days later, Short was present in the meeting at which Jones reviewed the company's Attendance Policy and posted a copy of it. Between November 20 and December 13, Short missed seven working days—half of her scheduled working days during the period. On December 10 and December 11, Short did not report for work, nor did she call in. Jones gave her a Final Written Warning for absenteeism on December 13, 1984.

30. On January 3, 1985, Jones gave Short yet another written notice, which concluded: "Due to the lack of effort on your part to improve your attendance, any further absence and/or tardiness will result in your termination." The notice was issued pursuant to paragraph 4 of the Company's Attendance Policy. Little over a month later, on February 13, Jones gave Short another written warning, for her failure to report off or call in on the preceding day. Six days after this warning, plaintiff was absent for two days. It was at this point that Jones finally decided to discharge Short; and as of February 21, 1985, she was discharged, with Jones providing the following "Explanation/Justification:"

> Jean due to your past record of absenteeism which you have received warnings on (12-13-84, 1-3-85 & 2-13-85) plus your absence on 2-19-85, & 2-20-85 we must now discharge you from employment at Golden Flake / Due to excessive absenteeism.

31. While plaintiff was discharged for his first absenteeism offense following the mid-November meeting, Short was given three separate warnings for absenteeism prior to her discharge. Plaintiff's attendance record was blemished by only one tardiness offense in the year preceding his discharge; Short was absent some forty days in the same period, and on two of those days she neither reported to work nor called in.

32. The disparate treatment of plaintiff and Jean Short, a white employee with a worse attendance record, is a product of the Company's intention to discriminate against plaintiff because of his race or color.

33. Plaintiff's discharge was unrelated to his job performance; and he was never involved in any conduct or behavior which would warrant immediate discharge without prior warning.

34. The Company has no written policies or procedures relating to discipline, discharge, absenteeism or tardiness other than those set forth in its "Disciplinary Policy and Procedure" and "Attendance" Policy.

35. In administering its Attendance Policy, the Company has been more lenient with its white employees than with its black employees.

36. Generally, employees are not given a warning for a first tardiness offense; rather, a series of tardiness offenses must be accumulated before they will be disciplined for that offense.

37. There are no written standards to guide the exercise of a supervisor's discretion in deciding whether to discipline an employee for absenteeism or tardiness.

38. Since his discharge, plaintiff has diligently sought interim employment in an effort to mitigate his damages. He has earned $350.00 in the interim.

39. If plaintiff had remained in defendant's employ, he would have earned $26,082.00 through August, 1986. He would have earned an additional $5,998.20 during the period September 1, 1986–January 3, 1987. He would also be entitled to paid holidays, a Christmas bonus, and a 3–week vacation for 1985 and 1986, and other accrued fringe benefits.

■ 40. Plaintiff has carried his *prima facie* burden of proof of racial discrimination.

■ 41. Defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge—namely, that plaintiff was discharged because of his "numerous unexcused absences in violation of Company policy and after having been warned and disciplined on many occasions given every chance to improve over a seven-year period." Defendant's Trial Memorandum, p. 2.

■ 42. Plaintiff has established, by a preponderance of the evidence, that the articulated reason for his discharge is unworthy of credence and a pretext for discrimination.

43. Plaintiff is entitled to reinstatement, a permanent injunction against fu-

ture discrimination, backpay, attorney's fees and reimbursement.

By separate order, judgment shall be entered in favor of plaintiff, with the appropriate remedial orders.

## JUDGMENT AND PERMANENT INJUNCTION

Based on the accompanying Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED, DECLARED and DECREED as follows:

1. Defendant GOLDEN FLAKE SNACK FOODS, INC., has violated 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*, by discharging plaintiff TAYLOR HEARD because of his race or color.

2. Defendant GOLDEN FLAKE SNACK FOODS, INC., its officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this order by publication or otherwise, are hereby PERMANENTLY ENJOINED from discriminating on the basis of race against plaintiff TAYLOR HEARD in the terms and conditions of his employment.

3. Defendant GOLDEN FLAKE SNACK FOODS, INC., shall reinstate plaintiff TAYLOR HEARD to his former position at the Company, with all accrued fringe benefits, effective as of January 5, 1987.

4. Plaintiff TAYLOR HEARD shall have and recover of defendant GOLDEN FLAKE SNACK FOODS, INC., the sum of $31,730.20 as backpay; and such further amount as he would have been paid for holidays, Christmas bonuses, and 3–week vacation had he been an employee of the Company during 1985 and 1986.

5. Plaintiff shall have and recover of defendant a reasonable attorney's fee, and reimbursement of expenses, to be fixed by the Court in the absence of an agreement between the parties. Plaintiff's counsel shall file an itemized statement of his claim for attorney's fees and expenses not later than February 15, 1987, in the absence of an agreement between the parties. The Court shall thereafter set the matter for evidentiary hearing.

6. The costs of this action are hereby taxed against defendant, for which execution shall issue.